UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GEZA TOTH for EUGENE TOTH,

                        Petitioner,          **MEMORANDUM and ORDER**

          — against —                        07-CV-3239 (SLT)(JO)

BOARD OF EDUCATION, QUEENS DISTRICT 25,
DIANE KAY, DISTRICT 25 SUPERINTENDENT,
LUCIUS YOUNG, PRINCIPAL, PS 163,

                       Respondent.
------------------------------------------------------------------x
**TOWNES, United States District Judge:**

      In August 2007, plaintiff Geza Toth commenced this action on behalf of his son, Eugene Darden Toth, alleging that defendants violated his constitutional rights by reserving half of the places in the Mandarin-English Dual Language Kindergarten Program at P.S. 163 for "children whose mothers speak Mandarin." Complaint dated August 4, 2007 ("Complaint"), at ¶ 1. After plaintiff's motion for a preliminary injunction was denied by this Court on August 30, 2007, defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, defendants' Rule 12(c) motion is granted in part and denied in part.

## BACKGROUND

      The following facts are drawn exclusively from plaintiff's 10-page complaint, the allegations of which are assumed to be true for purposes of this motion. Eugene Darden Toth ("Eugene"), who was five years old at the time this action was commenced, lives with his father, Geza Toth ("Mr. Toth"), in Flushing, New York, within the boundaries of School District 25 (Complaint at ¶¶ 1, 9). During the three years prior to August 2007, Eugene was enrolled in pre-school programs taught in Mandarin by native speakers, some of whom were recent immigrants from Taiwan or China and many of whom spoke no English (*Id*. at ¶ 10). According to the complaint, Eugene excelled in this environment, "rank[ing] number one in reading and writing

Chinese characters" and winning awards in Chinese-language competitions involving Chinese students older than he (*Id*.).

When it came time for Eugene to go to kindergarten, Mr. Toth applied to have Eugene included in a Mandarin-English Dual Language Program (the "Program") taught at P.S. 163, an elementary school located in Flushing. According to the complaint, Eugene was "ineligible to attend any [other] public school teaching Mandarin Chinese." (*Id*. at ¶ 9). Nonetheless, on May 9, 2007, Mr. Toth received a letter from the school principal, defendant Lucius Young, advising him that Eugene had not been accepted into the Program for the school year beginning in September 2007 (*Id*. at ¶ 17). Although the Complaint implies that Mr. Toth pursued unspecified "administrative remed[ies]" (*id*. at ¶ 18), it is unclear precisely what actions, if any, Mr. Toth took after receiving this letter and before filing the instant action.

On August 6, 2007, Mr. Toth commenced this action against Principal Young, the New York City Board of Education, "Queens District 25," and District 25 Superintendent, Diane Kay, claiming that his son was disadvantaged by admissions policies that "favor[] children with Chinese or Mandarin speaking mothers" (*Id*. at ¶ 9). In his complaint, Mr. Toth alleges that the "defendants reserved half the . . . Program places for children whose mothers spoke Chinese," thus giving those children "a higher probability of admission than children of another ancestry, origin or race[,] such as Eugene" (*Id*. at ¶ 15). Mr. Toth further alleges that the defendants intended to discriminate on the basis of race and ethnic origin (*id*. at ¶ 4), and that Principal Young was personally involved in depriving Eugene of his constitutional rights in that he either "carried out the policy or custom under which unconstitutional practices occurred . . . or . . . allowed such policy or custom to continue" (*Id*. at ¶ 18).

The Complaint alleges two causes of action. In the first, Mr. Toth makes an equal

protection argument, claiming that the "selection procedures implemented by the defendants amounted to a form of affirmative or remedial action for the children of Chinese mothers . . . and thereby discriminated against students who were not Chinese" (*Id*. at ¶ 24). In the second cause of action, Mr. Toth principally alleges a violation of due process, claiming that the admissions decisions were made through "a secret lottery" without consideration of applications submitted by parents and interviews conducted with the children by the school's own staff (*Id*. at ¶ 34).[1]

On September 20, 2007, defendants filed an answer which not only denied most of the allegations in the Complaint, but also made various affirmative allegations concerning the admissions process. Citing to the Program's promotional literature – copies of which were attached to the pleading – the answer alleged that the Program was "open to all students, regardless of ethnicity or ability," provided that they were proficient in either English or Mandarin. (Answer at ¶ 9). The answer further alleged that "one half of the seats in the Program were designated for children who are proficient in Mandarin and one half of the seats in the Program for children who are proficient in English," and that children who were zoned for enrollment in P.S. 163 were given priority. (*Id*. at ¶ 15). According to the answer, students were interviewed by teachers during the application process to determine their language proficiency, and parents were advised of "the lottery process to be used if the number of applicants . . . exceeded the number of available seats." (*Id*. at ¶ 29).

The answer also contained affirmative allegations concerning Eugene's application. Specifically, the pleading alleged that Mr. Toth had stated on his son's application that Eugene was "English speaking," that the teachers had interviewed Eugene and determined that he was

---

[1]The second cause of action also contains a Freedom of Information Act claim, alleging that Principal Young "disregarded a Freedom of Information Act request to review documentation of the lottery" (*Id*. at ¶ 33).

3

not proficient in Mandarin, that Mr. Toth had been advised about the lottery both in the application and during the interview, and that Community Superintendent Diane Foley had publicly announced the necessity for, and the date of, such a lottery at a meeting of the Community Education Council for District 25 and had invited the general public to attend. (*Id*., ¶ 34). According to the answer, the lottery was held on May 8, 2007, and resulted in Eugene's being "placed as number 11 on the waiting list for English-proficient students who are not zoned for P.S. 163." (*Id*.).

*The Instant Motion*

Defendants now move pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings. The moving papers raise five points, all of which will be discussed in more detail in the discussion below. The first point argues that the central allegation underlying plaintiffs' first cause of action – namely, that the Program sets aside half its seats for students whose mothers speak Chinese – is "without factual support and is demonstrably false." Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Defendants' Memo") at 1, 7. In Point II, defendants argue that one of the defendants – "School District 25" – is not a "suable entity." (*Id*. at 16). In Point III, defendants contend that the individual defendants are entitled to qualified immunity. Finally, in the last two points, defendants urge this Court to dismiss the second cause of action on the grounds (1) that plaintiffs' procedural due process rights were not violated because plaintiffs had no property interests in attending the Program and (2) that plaintiffs had an adequate post-deprivation remedy which was never utilized (*Id*. at 20-24).

**DISCUSSION**

*A.     Standard of Review*

"The standard for granting a Rule 12(c) motion is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). In deciding either a Rule 12(c) motion or a motion pursuant to Rule 12(b)(6), this Court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). A court must then determine whether a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly v. Bell Atlantic Corp.*, — U.S. —, —, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

In deciding motions pursuant to Rule 12(c) or 12(b)(6), a court "is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007). However, in some circumstances, a court may consider documents other than the complaint, such as "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47-48 (2d Cir. 1991)); *see also Roth*, 489 F.3d at 509. If material other than that listed by the *Brass* Court is "presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion . . . ." Fed.R.Civ. P. 12(c).

## B. *Plaintiffs' First Cause of Action*

In their first argument, defendants urge this court to consider documents other than those encompassed within the very limited list set forth in *Brass* and *Roth*. Defendants argue that plaintiffs' first cause of action is "[w]ithout any basis in fact" because it incorrectly asserts that half the seats in the Program were reserved for children with Chinese mothers. Relying on affirmative allegations contained in their own answer, Program promotional materials attached as exhibits to that pleading, and an affidavit submitted by Principal Young in opposition to plaintiffs' earlier motion for a preliminary injunction, defendants argue that half the seats in the Program were actually reserved for students who were proficient in Mandarin, and that this race-neutral classification passes Constitutional muster.

Although this argument may ultimately prove meritorious, the evidence upon which it relies cannot be considered upon this motion for judgment on the pleadings. The promotional literature on which defendants' argument principally relies was neither attached as an exhibit to, nor incorporated by reference in, plaintiffs' complaint. Moreover, while Mr. Toth may well have known of this literature and may even have had it in his possession at the time he brought his lawsuit, there is nothing to suggest that he relied on the terms and effect of these documents in drafting the complaint. To the contrary, plaintiffs are alleging that, regardless of whatever representations to the contrary appear in the promotional literature, the Program used the ethnicity or nationality of a child's mother in determining which students to admit. Since "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original), the fact that Mr.

Toth may have had notice of, and even possessed, the promotional materials is not enough to permit this Court to consider them.

This Court also cannot take into consideration the other evidence on which defendants rely in their argument. First, the Court cannot assume the truth of the affirmative allegations contained in defendants' answer. Rather, in deciding this Rule 12(c) motion, the Court must not only assume that the allegations in plaintiffs' complaint are true, but must also assume that all contravening assertions in the defendants' pleadings are false. *See* 5C Wright & Miller, Fed. Practice & Procedure, Civil § 1368, at 230 (3d ed. 2004) (citing cases). This Court also cannot consider the affidavit of Principal Young, which was submitted in opposition to plaintiffs' motion for preliminary injunctive relief. While this affidavit was properly considered in connection with that motion, which required the Court to assess plaintiffs' likelihood of success in this action, it is not encompassed within the limited list of documents which this Court can consider upon the instant motion. *See Brass*, 987 F.2d at 150; *see also Roth*, 489 F.3d at 509.

This Court recognizes that it has discretion under the express terms of Rule 12(c) to convert this motion into one for summary judgment, but this Court declines to exercise that discretion at this juncture. The instant motion was filed early in the litigation, before either party had had the opportunity to fully investigate the facts in the case. As a result, the documents appended to the answer and the information contained in Principal Young's Affidavit in Opposition to Plaintiffs' Motion for Injunctive Relief relate to the selection process in general, and not to the process involved in selecting the children during the year in question. Since discovery has doubtless progressed during the time this motion was pending, defendants would likely have additional evidence to submit in support of summary judgment. Therefore, there is nothing to be gained by converting the motion, rather than denying the Rule 12(c) motion with

7

respect to the first cause of action without prejudice to seeking permission to raise the same issue in a motion for summary judgment following the close of discovery. Accordingly, defendants' motion for judgment with respect to the first cause of action is denied.

C.     *Plaintiffs' Second Cause of Action*

Plaintiffs' second cause of action alleges that "[t]he School District . . . violated due process" by "decid[ing] admission by a secret lottery without consideration of the [prosective students'] applications and interviews." Complaint, ¶ 34. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." As the Supreme Court noted in *Daniels v. Williams*, 474 U.S. 327 (1986), "this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." *Id* . at 331 (emphasis in original). There are three elements to a procedural due process claim: "(1) that the plaintiff possessed a constitutionally protected interest, (2) that such interest was deprived as a result of government action, (3) and that the deprivation occurred without constitutionally adequate pre- or post-deprivation process." *Does v. Mills*, No. 04 Civ. 2919(RWS), 2005 WL 900620, at *8 (S.D.N.Y. April 18, 2005) (citing *New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 163 (2d Cir.2001)).

In this case, the defendants argue that plaintiffs' complaint fails to allege facts making out a violation of either the first or third of these elements. With respect to the first element, defendants argue that plaintiffs lack a constitutionally protected interest in participating in the Program. With respect to the third element, defendants argue that plaintiffs have an adequate post-deprivation remedy in that Mr. Toth could have challenged the selection process in a proceeding pursuant to Article 78 of New York's Civil Practice Law and Rules.

8

Property interests are not created by the Constitution, but arise from independent sources such as state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). New York law provides for a free education to any person over age five and under age twenty-one. N.Y. Educ. Law § 3202(1). Indeed, children between the ages of six and sixteen are required to attend school. *Id*., § 3205(1). Accordingly, Eugene unquestionably has a legitimate entitlement to a public education under New York law. *See Mazevski v. Horseheads Cent. Sch. Dist*., 950 F.Supp. 69, 72 (W.D.N.Y. 1972).

"[A] student's legitimate entitlement to a public education [is] a property interest which is protected by the Due Process Clause and which may not be taken away . . . without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). However, the property interest which the *Goss* Court found to be protected by Due Process was "the right to participate in the entire educational process and not the right to participate in each individual component of that process." *Mazevski*, 950 F.Supp. at 72. In other words, under *Goss*:

> [I]t is only when a student is excluded from the entire educational process that due process must be afforded. His exclusion from a particular course, event or activity is of no constitutional import.

*Id*.

In this case, plaintiffs' complaint does not suggest that Eugene was denied his right to a free public education. Rather, plaintiffs contend only that Eugene was denied a place in P.S. 163's Mandarin-English Dual Language Program. However, plaintiffs do not – and cannot – cite to any provision of law that entitles an English-speaking kindergarten student to enroll in such a program. Thus, although Mr. Toth may have planned Eugene's pre-school education with the expectation that he would be able to attend the Program, plaintiffs lack a legitimate claim of

9

entitlement to enrollment. Mr. Toth's "unilateral expectation" or "abstract need or desire" is simply insufficient to create a property interest in the Program. *See Roth*, 408 U.S. at 577.

Plaintiffs' assertion that defendants' refusal to enroll Eugene in the Program deprived him of a liberty interest is similarly unpersuasive. *Meyer v. Nebraska*, 262 U.S. 390 (1923), on which plaintiffs principally rely, did not, as plaintiffs' opposition papers suggest, hold that students have a liberty interest in learning foreign languages in public schools. Indeed, *Meyer* involved a teacher in a parochial school who was convicted of teaching German to a ten-year-old in violation of Nebraska law. The Supreme Court held that Meyer had a liberty interest in teaching the language, and that parents had a "right . . . to *engage* him so to instruct their children." *Meyer*, 262 U.S. at 400 (emphasis added). Similarly, *Plyler v. Doe*, 457 U.S. 202 (1982), is inapposite because it involved the rights of the children of illegal Mexican immigrants to obtain a free public education, not the rights of English-speaking public school students to enroll in a dual-language program.

For these reasons, this Court concludes that plaintiffs cannot make out a procedural due process violation because they cannot establish that Eugene had a constitutionally protected property or liberty interest in enrolling in the Program. In light of this conclusion, this Court need not address defendants' argument that plaintiffs also had an adequate post-deprivation remedy. However, the Court notes that, if it were to reach this issue, it would find that plaintiffs did have such a post-deprivation remedy in that they could have brought an Article 78 proceeding to challenge the defendants' admissions process. *See* N.Y. C.P.L.R. § 7803(3).

### D.    *Plaintiffs' Claims Against District 25*

Defendants next argue that "District 25" is not a suable entity. Defendants first assume – as will this Court – that plaintiffs are attempting to sue Community District 25, one of the more

10

than thirty local school board districts into which the city school district of the City of New York is subdivided. *See* N.Y. Educ. Law § 2564. Then, noting that such districts have been created by the legislature, defendants quote to the following dictum:

> [A]rtificial creatures of statute . . . have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete predicate.

*Community Bd. 7 v. Schaffer*, 84 N.Y.2d 148, 155-56 (N.Y. 1994). Finally, defendants reason that because the "relevant enabling statute, N.Y. Education Law 2590-b, . . . does not promulgate any powers or authorities for the districts itself," District 25 is not a "suable entity." Defendants' Memo at 16.

This Court is not persuaded by defendants' argument. After setting forth the dictum set forth above, the *Schaffer* Court specifically noted:

> With respect to the capacity question [i.e., the capacity to sue or be sued], . . . the authority of a government agency to bring suit does not require 'that in every instance there be express legislative authority . . . .' Rather, . . . capacity . . . may also be inferred as a 'necessary implication from [the agency's] power[s] and responsibilit[ies], provided, of course, that 'there is no clear legislative intent negating review.'

*Schaffer*, 84 N.Y.2d at 156 (quoting *Matter of City of New York v. City Civ. Serv. Commn.*, 60 N.Y.2d 436, 443-45 (N.Y. 1983)) (emphasis and bracketed material in first line added; internal citations omitted). Accordingly, the absence of express legislative provisions concerning the capacity of community school districts to sue or be sued is not determinative.

Moreover, defendants do not cite to any cases or other authorities specifically holding that community school boards cannot be sued. *Schaffer* itself did not involve a community school board authorized by State Education Law, but rather a community planning board established by the New York City Charter. *Id.*, 84 N.Y.2d at 152. Defendants do not cite to any

11

other cases, much less attempt to distinguish cases in which actions have been maintained against community school districts and boards. *See*, *e.g.*, *Parent Assn. of P.S. #50 v. Queens, New York Community School Dist. #28*, 625 F.Supp. 1505 (E.D.N.Y. 1986) (class action in which class was certified before case was ultimately dismissed); *Roberts v. Community Sch. Bd. of Community Dist. No. 6*, 66 N.Y.2d 652 (N.Y. 1985) (case against community school board litigated all the way to Court of Appeals).

For these reasons, defendants' papers are insufficient to persuade this Court that actions cannot be brought against community school districts. If defendants can find authority which specifically supports their position, defendants may request permission to renew this argument in their motion for summary judgment.

### E. *Qualified Immunity*

Finally, defendants argue that the individual defendants – namely, Principal Young and District 25 Superintendent Diana Kay – are entitled to qualified immunity. Government officers are entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Even where the law is "clearly established," officers are entitled to qualified immunity if it was "objectively reasonable" to believe that their actions were lawful at the time they acted. *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993).

In either event, however, this defense generally "turns on facts not apparent from the face of [the] complaint." *Levine v. Lawrence*, No. 03 Civ. 1694, 2005 WL 1412143, at *10 (E.D.N.Y. June 15, 2005). Because this defense "necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss . . . .'" *Bernstein v. City of New York*, No. 06 Civ. 895 (RMB), 2007 WL 1573910, at *9 (S.D.N.Y.

May 24, 2007) (quoting *Walker v. Mendoza*, No. 00 Civ. 93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)).

This case is not an exception to that general rule. Here, defendants argue that the individual defendants are entitled to qualified immunity because "there is no decisional law from the United States Supreme Court or the Second Circuit holding that a dual language program may not designate a certain number of seats for children proficient in each of the languages taught." Defendants' Memo at 19. However, as noted above, the question of whether the Program allocated seats based on language proficiency or based on the ethnicity or nationality of the mother remains at issue in this case. In light of these factual uncertainties, this Court cannot yet determine whether qualified immunity is appropriate in this case.

## CONCLUSION

For the reasons set forth below, defendants' Rule 12(c) motion is granted to the extent that plaintiffs' second cause of action, alleging a violation of procedural due process, is dismissed. Defendants' motion is denied in all other respects. Following the close of discovery, defendants may file a pre-motion request, seeking permission to move for summary judgment upon any arguments rejected herein.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge